32192.   HUEY *v.* LaGRANGE MOTORS INC.

DECIDED FEBRUARY 17, 1949.

*Willis Smith, Frank Grizzard, Frank A. Bowers,* for plaintiff in error.

*J. R. Terrell Jr.,* contra.

MACINTYRE, P. J. "The object of the statute requiring the record of a contract of conditional sale reserving title is to protect the vendor and the vendee against each other, and the public against both. The record of such an instrument is notice to the world [or at least to anyone who subsequently purchases the property] that the owner of the property has parted with his absolute dominion over it, but retains the title as security for his debt." *Chattanooga Finance Corp.* v. *Bitting,* 38 *Ga. App.* 490 (1) (144 S. E. 331). In order for the owner to claim, against all subsequent purchasers, the advantage of this implied notice of his title from the date of the delivery of the possession of the property to the purchaser, the retention-of-title contract must be in writing and must be recorded, in the county where the purchaser resided at the time of its execution, within thirty days from its date. Code, §§ 67-1401, 67-1402, 67-1403, 67-108. Under the facts appearing in the instant case, though the automobile was purchased in Troup County if in fact Fulton County was the residence of the purchaser at the time the instrument was executed, it would not be essential to the validity of the implied notice for the contract to be recorded also in Troup County. Code, § 67-108; *Grady Trading Co.* v. *Ireland,* 29 *Ga. App.* 172 (114 S. E. 86). The trial court, sitting as judge and jury, found that Fulton County was in fact the county of the purchaser's residence, at the time he, Crain, executed the instrument; and, if there was sufficient evidence to support this finding this court will not interfere with that verdict. *Wilson* v. *Barnard,* 10 *Ga. App.* 98, 99 (72 S. E. 943); *Jackson* v. *State,* 56 *Ga. App.* 392 (1) (192 S. E. 630). The evidence upon the question of Crain's residence at the time of the execution of the retention-of-title contract is conflicting. E. M. Sammons, President of LaGrange Motors Inc., testified: "I personally handled that transaction [sale of the automobile to Crain] and saw Mr. Crain execute

these documents [the retention-of-title contract and recording certificate]. . . He represented to me that he lived in Atlanta. I know where he was living; I contacted him a number of times in Atlanta over the telephone and at a phone listed as his residence number, that was listed over a period of time and I would say that I called him over the phone dozens of times in 1947. . . I have been told he now resides at Louise [Georgia, in Troup County] but not [for] very long; I would say he lived in Atlanta in December [after the execution of the contract in October]; I contacted him there; I have never been to his home and I only know where he lived in Atlanta by his street number he furnished me. . . I contacted him by phone back in December in Atlanta. . . I called at the number he told me was his residence and talked to him at that time and talked to his wife several times during 1947 about making payments on cars and trucks, about these two cars in question. I called him in December, November, and October . . I would say that during December and November, 1947, I called him perhaps two or three times at his home and I don't know of any other place I called him except his residence number; of course, I couldn't swear where he was when he was talking other than where I placed the call. . . When I made these two sales to Mr. Crain, I inquired of Mr. Crain as to his residence and he told me his residence was Atlanta, Fulton County, Georgia, and I made a notation to that effect; as I recall he told me he would get his mail out at Louise but that his residence was Atlanta, but that he would get his mail at either place. [The retention-of-title contract which Crain signed recites his address to be 980 Cherokee Ave., Atlanta, Georgia]. . . He has responded to communications that I sent to him in Atlanta, Georgia, by coming to see me." Mr. Sammons admitted that he had contacted Mr. Crain at his farm in Troup County, and that he had seen Mr. Crain's wife there, and testified further: "I know during November, 1947, and December, 1947, I called him at that number, 980 Cherokee Avenue, and his number in the telephone [book], and talked to him. . . I have talked to him here in Atlanta since October 3, 1947. . . The address, R. T. Crain, 980 Cherokee Avenue, S. E., Atlanta, Georgia, was on these documents at the time Mr. Crain executed same." Frank B. Stow, an attor-

ney from Gainesville, Georgia, testified: "I know Mr. R. T. Crain. In the month of October 1947, I had some dealings with him. . . Mr. Crain . . came to Gainesville and we went to LaGrange. When we came through Atlanta here, we went by Cherokee Avenue or somewhere back out in this section out here and stopped and got his little boy. Mr. Crain went in a house on Cherokee Avenue and came out with his boy, he said it was his boy. He said, 'Every time I drive off in this automobile, I .have to ride him a little bit.' So he rode him around the block and put him out. . . That afternoon . . we came back to Atlanta. Mr. Crain stopped at Cherokee Avenue out there and this same little boy came out, brought him out and put him in the car and he had another boy who looked to be 7 or 8 years old and he came out and got in the car and one girl, and finally his wife came out and talked with him a while and he stood in the driveway and talked with someone else on Cherokee Avenue. . . Mr. R. T. Crain gave me the information as to where he lived on October 15, 1947, as Fulton County, Georgia. That on October 15, 1947, his residence was in Fulton County, Georgia, he said out on Cherokee Avenue, the same place we stopped that morning and picked up his boy and he gave me that information voluntarily." Mrs. O. P. Crain testified: "I know Mr. R. T. Crain. . . In riding in an automobile I have been on Cherokee Avenue. I know where it is, out near Grant Park. Mr. Crain has lived at 980 Cherokee Avenue, Atlanta, and I have talked to him over the telephone at that residence. As to whether I know when Mr. Crain moved away from 980 Cherokee Avenue— I couldn't tell you the exact date but as late as December . ., 1947, I talked to Mrs. R. T. Crain over the telephone and at that time she and her children were living on Cherokee Avenue in Atlanta, Georgia." Mr. Crain, the purchaser of the automobile, directly contradicted and denied all the above-quoted testimony material to the issue of his residence in Fulton County, and testified that he had moved to Troup County in January 1947, prior to the execution of the contract in October, and that his family had followed him to Troup County in June 1947, after the children got out of school. He also stated that he had not lived in the house on Cherokee Avenue since that time and that it had since been vacant. Several witnesses were placed upon

the stand who substantiated his testimony as to moving to Troup County, and as to the date thereof, and at least one of the witnesses testified that the Crain children were in school in Troup County during the fall of 1947. The question of residence at the time of the execution of the contract is one of fact. *Bond* v. *Brewer,* 96 *Ga.* 443, 445 (23 S. E. 421). " 'The fact of actual residence is to be determined by the ordinary and obvious indicia of residence.' " *Alvaton Mercantile Co.* v. *Caldwell,* 34 *Ga. App.* 151 (6), 152 (128 S. E. 781). Where, as here, the automobile was resold to a purchaser without actual notice in the county where the contract was recorded within the time required by law; and, where as here, there was evidence, though conflicting, of the ordinary and obvious indicia of residence tending to show, by circumstances and by act and admission of the purchaser under the retention-of-title contract, that Fulton County was the county of his residence at the time of the execution of the contract, the evidence was sufficient to authorize the court, sitting as judge and jury, to find that Fulton County was in fact the purchaser's residence at the time in question, and the court did not err in overruling the motion of the claimant for a new trial based solely on the general grounds.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*